IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. LUX


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

JACOB M. LUX, APPELLANT.


Filed April 13, 2021.    No. A-20-454.


Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge, on appeal thereto from the County Court for Box Butte County: PAUL G. WESS, Judge. Judgment of District Court affirmed.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.


PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Jacob M. Lux appeals from the order of the district court for Box Butte County which affirmed the decision of the county court overruling his motion for absolute discharge. Lux argues that the court incorrectly found that a continuance granted to the State was excludable time for purposes of speedy trial calculations. Based upon the reasons that follow, we affirm.

## BACKGROUND

On March 15, 2019, the State filed a complaint in the county court for Box Butte County which charged Lux with one count of first offense driving under the influence (over .15), a Class W misdemeanor, and one count of unlawful display of plates, a Class III misdemeanor.

- 1 -

On April 29, 2019, Lux filed a motion to suppress evidence. In the motion, Lux challenged, inter alia, the warrantless search and seizure of his blood by law enforcement. On July 1, the county court issued a written order which in part overruled and in part sustained Lux's motion to suppress. Relevant to this appeal, the county court found that Lux's constitutional rights had been violated by the warrantless search and seizure of his blood, and the court ordered that the results of the blood tests would be inadmissible at trial.

The county court set the case for a jury trial which was scheduled to begin on October 7, 2019. On August 23, the State filed a motion to vacate, requesting that the county court vacate its prior order which suppressed evidence of Lux's blood draw and analysis. After a hearing on September 5, the county court took the State's motion under advisement. On September 18, the county court issued an order which denied the State's motion to vacate, but which also "reconsidered" the suppression order, ultimately reversing its initial ruling and holding that evidence related to Lux's blood draw would be admissible at trial.

On September 23, 2019, the State filed a motion to continue the jury trial on the grounds that the analyst who had tested Lux's blood sample was unavailable for the October 7 trial date. At a hearing that same day, the State informed the court that it had attempted to contact the analyst immediately after the court had issued the order reversing the suppression order but had been unable to reach her because she was out of the office. Prior to the hearing, the State had spoken with the analyst, who said she was unavailable on October 7 because she was scheduled to testify at a different trial. Immediately after this phone conversation, the State filed its motion to continue.

Lux objected to the State's motion to continue. Lux argued that the State had failed to offer evidence in support of its motion, and he further argued that because the State had filed a motion to vacate the court's suppression order, it should have anticipated that the analyst's testimony might be required at trial. Lux's counsel advised the court that if the matter were continued, he would not be available for trial until at least November 18, 2019. The county court told the parties that if a continuance were granted, December 2 would be the first available day for a jury trial on the court's calendar. The county court granted the State's motion, and it ordered a jury trial to be set for December 2. Lux did not object to the December 2 trial date.

On December 2, prior to the start of trial, Lux filed a motion for absolute discharge, alleging that his right to a speedy trial had been violated. After a hearing where both parties submitted exhibits, the county court issued a written order. Relevant to this appeal, the State submitted the sworn affidavit of the lab analyst, and the contents of the affidavit were consistent with the prosecutor's unsworn statements at the hearing on the State's motion to continue. Lux did not object to the receipt of the affidavit into evidence.

The county court issued an order overruling Lux's motion for absolute discharge. The order found that the State's use of unsworn statements to support its motion to continue deprived Lux of a technical right, but not an essential legal right. The court also noted that at the hearing on the motion for absolute discharge, the State had offered into evidence the sworn affidavit of the analyst, the contents of which did not materially vary from the arguments made at the hearing on the motion to continue. The order further found that the continuance was justified in light of the fact that the court had previously entered an order suppressing the results of Lux's blood test but then had later "extraordinarily" reversed the suppression order. The court found that the State had

taken immediate steps to determine the witness' availability for trial and had filed its motion to continue as soon as it learned the witness would not be able to testify on October 7.

Lux appealed the order of the county court to the district court. In a written opinion, the district court affirmed the order of the county court which overruled Lux's motion for absolute discharge. The district court found that after the county court reversed its suppression order, the analyst became a material witness, and that the State had acted with due diligence in attempting to secure the witness' presence at trial. The district court further found that the reversal of the suppression order shortly before a scheduled trial was an "exceptional circumstance" which justified both the grant of the continuance and the exclusion of the time from speedy trial calculations.

Lux now appeals the order of the district court.

## ASSIGNMENTS OF ERROR

Lux assigns that the district court erred in affirming the order of the county court which overruled his motion for absolute discharge

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards for review that we apply to decide appeals from criminal convictions in district court. *Id.*

Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Blocher*, 307 Neb. 874, 951 N.W.2d 499 (2020). But statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *Id.*

## ANALYSIS

Lux argues that the district court erred in affirming the county court's order on the motion for absolute discharge because (1) the county court applied an incorrect standard of proof, (2) the State failed to establish that it exercised due diligence to secure the witness for trial, and (3) the State failed to submit evidence which demonstrated Lux could not be brought to trial prior to the expiration of his speedy trial clock.

Lux's argument relies upon the interpretation and application of Nebraska's statutory provisions regarding continuances in the context of a criminal defendant's statutory right to speedy trial. Thus, we begin by recalling these provisions.

Neb. Rev. Stat. § 29-1206 (Reissue 2016) states that "[a]pplications for continuances shall be made in accordance with section 25-1148" and that in criminal cases, "the court shall grant a

continuance only upon a showing of good cause and only for so long as necessary, taking into account not only the request or consent of the prosecution or defense, but also the public interest in prompt disposition of the case." Neb. Rev. Stat. § 25-1148 (Reissue 2016) provides that an application for continuance shall be made by a written motion

> setting forth the grounds upon which the application is made, which motion shall be supported by the affidavit or affidavits of person or persons competent to testify as witnesses under the laws of this state, in proof of and setting forth the facts upon which such continuance . . . is asked. After the filing of such application and the affidavits in support thereof, the adverse party shall have the right to file counter affidavits in the matter. Either party may, upon obtaining leave of the court, introduce oral testimony upon the hearing of such application. The court may, upon the hearing, in its discretion, grant or refuse such application, and no reversal of such cause or proceeding shall be had on account of the action of the court in granting or refusing such application except when there has been an abuse of a sound legal discretion by the court.

In Nebraska, a defendant who is not brought to trial before the running of the time for trial, as extended by excluded periods, shall be entitled to absolute discharge. Neb. Rev. Stat. § 29-1208 (Reissue 2016). The burden of proof is upon the State to show that one or more of the excluded time periods under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016) are applicable when the defendant is not tried within 6 months. *State v. Chapman*, 307 Neb. 443, 949 N.W.2d 490 (2020). To overcome a defendant's motion for absolute discharge on speedy trial grounds, the State must prove the existence of an excludable period by a preponderance of the evidence. *Id.*

To calculate the deadline for a trial for speedy trial purposes, a court must exclude the day the State filed the complaint, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4). *State v. Blocher, supra*. In this case, the original complaint was filed on March 15, 2019. Therefore, the speedy trial deadline before adding any excluded time was September 15. However, because September 15 fell on a Sunday, the deadline became September 16. Lux filed his motion for absolute discharge on December 2, which was 77 days beyond the 6-month period. We thus consider whether at least 77 days are properly excluded under § 29-1207(4) from the speedy trial calculation.

The parties do not dispute that the time between the filing and the resolution of Lux's motion to suppress should be excluded. The motion to suppress was filed on April 30, 2019, and the county court issued its order on the motion on July 1. This resulted in an excludable period of 63 days which extended the trial deadline to November 18. We now turn to the State's September 2019 continuance.

*Appropriate Standard of Proof.*

Initially, Lux argues that the county court applied the incorrect standard of proof at the hearing on his motion for absolute discharge. Citing to *State v. Kinstler*, 207 Neb. 386, 391, 299 N.W.2d 182, 186 (1980), he claims that the State has the burden of proving the existence of an excludable period of time for speedy trial purposes "by a *substantial* preponderance of the evidence." (Emphasis supplied.) In its order, the county court stated that the State's burden of proof is "by a preponderance of the evidence," citing to *State v. Williams*, 277 Neb. 133, 761

- 4 -

N.W.2d 514 (2009). Although Lux argues that the application of "the wrong standard of proof is clearly erroneous," he does not allege how the county court's analysis would have changed had it held the State to a "substantial preponderance of the evidence" standard. Brief for appellant at 6.

The record shows that Lux did not raise this argument either at the trial court level or on appeal to the district court. Absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014).

Regardless, we note that the rule articulated in *State v. Williams, supra*, and *State v. Chapman, supra*, which omitted the word "substantial" from the applicable burden of proof, has been used by the Nebraska Supreme Court since at least 1987. See *State v. Lafler*, 225 Neb. 362, 405 N.W.2d 576 (1987) (citing *State v. Alvarez*, 189 Neb. 281, 202 N.W.2d 604 (1972)). Considering that *State v. Lafler, supra*, cited as the source of its standard of proof a case which included the word "substantial," we believe that there is no functional difference between "substantial preponderance of the evidence" and "preponderance of the evidence" for the purposes of a motion for absolute discharge. We also believe that the county court did not err when it relied upon more than three decades of Nebraska precedent and applied a preponderance of the evidence standard to this case. This argument fails.

*Evidence of Due Diligence.*

Lux next argues that the State's September 2019 continuance was improperly counted as excludable time because the State failed to exercise due diligence when attempting to secure the lab analyst's testimony for trial. Section 29-1207(3)(c)(i) provides that a continuance may be excluded from speedy trial calculations if the continuance "is granted because of the unavailability of evidence material to the state's case, when the prosecuting attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at the later date." Lux argues that the State was aware of the date of trial, and that at the time it filed its motion to vacate the county court's suppression order, it could have secured the analyst's presence for that trial date.

Although not complained of by Lux in this appeal, we mention that at the hearing on its motion to continue, the State did not support its motion with sworn affidavits or live testimony, in violation of §§ 29-1206 and 25-1148. However, at the hearing on Lux's motion for absolute discharge, the State offered multiple exhibits, including an affidavit authored by the lab analyst who had tested Lux's blood sample. In finding that the time attributable to the State's September 2019 continuance was excludable for speedy trial purposes, both the county court and the district court relied on *State v. Vela-Montes*, 19 Neb. App. 378, 807 N.W.2d 544 (2011) (affirmed by *State v. Vela-Montes*, 283 Neb. 530, 810 N.W.2d 749 (2012)).

In *State v. Vela-Montes, supra*, this court held that even though the State's request for continuance was supported only by the prosecutor's unsworn statements, the defendant had suffered a deprivation of a mere technical right rather an essential legal right. This court further determined that the trial court had not abused its discretion in granting the State's motion for continuance in light of the fact that the evidence presented at Vela-Montes' motion for absolute discharge "did not vary in any material respect from what was adduced at the hearing on the State's motion to continue." *State v. Vela-Montes*, 19 Neb. App. at 387, 807 N.W.2d at 555. In affirming the county court's order, the district court reasoned that the facts in Lux's case were identical to

those in *Vela-Montes*, and that therefore the county court had not abused its discretion in granting the State's September 2019 continuance or in excluding it from speedy trial calculations. Lux does not challenge these findings in this appeal.

Rather, Lux now argues that even considering the evidence submitted at the hearing on his motion for absolute discharge, the State did not meet its burden of proof in showing that it acted with due diligence. In support of this argument, Lux cites to multiple Nebraska cases pertaining to the exercise of due diligence to secure a witness' presence. For example, in *State v. Shipler*, 17 Neb. App. 66, 758 N.W.2d 41 (2008), this court found that the State had failed to make a showing that it had exercised due diligence in securing the presence of an allegedly unavailable law enforcement witness when an upcoming trial date had been known to the parties for over 2 months, and we therefore determined that the district court erred in excluded the time resulting from the continuation from speedy trial calculations.

However, the cases cited by Lux in his brief are factually distinct from the present case. Here, the issue is not merely that the State was aware of an upcoming trial date and failed to secure a witness' presence at trial in advance of that date. It is imperative to note that until September 18, 2019, there was a valid order entered by the county court which suppressed all evidence of Lux's blood draw and the results of the blood analysis. Therefore, until September 18, there would have been no reason for the State to obtain the lab analyst's presence at trial, except on a conditional or hypothetical basis. Certainly, prior to September 18, the lab analyst was not a "material" witness in the State's case.

On appeal, Lux suggests that the State should have determined the lab analyst's availability as soon as it filed its motion to vacate the suppression order. However, this goes beyond due diligence. The county court stated that its reconsideration of the suppression order was "extraordinary," and the district court's order likewise found the reversal to be an "exceptional circumstance." We believe it would be unduly burdensome to hold that the State did not exercise due diligence when it failed to obtain the lab analyst's presence at trial on such a hypothetical basis, before the county court ruled on the State's motion to vacate.

The uncontroverted evidence presented at the hearing on Lux's motion for absolute discharge showed that after the county court reversed its suppression order, the State immediately took steps to secure the lab analyst's presence at trial. However, the analyst was already scheduled to testify at another trial and was therefore unavailable, although the analyst's affidavit stated she was available the following week. In his brief, Lux does not dispute that the analyst was a material witness, that the State contacted the analyst immediately following the reversal of the suppression order, that the analyst was unavailable for the October 7, 2019, trial date, nor that the analyst was available for the later trial date. We conclude that the State proved by a preponderance of the evidence that it exercised due diligence in securing the analyst's presence at trial, especially considering the unique facts present in this case. This argument fails.

*Length of Continuance.*

Finally, Lux assigns that "[e]ven if the continuance was proper, the [S]tate still failed to show why [it] failed to bring the accused to trial before the expiration of his speedy trial time." Brief for appellant at 10. We construe this argument to allege that the State failed to show why a continuance of approximately 2 months--from October 7, 2019, to December 2, 2019--was

necessary and/or reasonable. He claims that the State was required to show "evidence as to the earliest trial date in order for the time to be excludable." Brief for appellant at 12. He further claims that the "substantial preponderance of the evidence failed to show that [Lux] could not be brought to trial . . . by November 18, 2019." *Id.* at 13.

At the hearing on the State's motion for continuance, Lux's counsel indicated that he was unavailable until at least November 18, 2019. Defense counsel advised the county court "I will tell you I'm not available for October. It's not until, I think, the end of November or beginning of December due to my schedule." Thus, to the extent that Lux now argues that it was unreasonable to continue trial until after November 18, this argument is unpersuasive, because the statements of Lux's own counsel indicate that the December 2 trial date was a reasonable date given counsel's schedule. There is no indication that a trial held prior to November 18 would have been feasible for Lux's counsel, nor did Lux's counsel ever object to the length of the continuance. Moreover, all of the cases relied upon by Lux in his brief involve excludable periods under § 29-1027(4)(f) or to continuances made upon motion by the court, rather than under § 29-1207(4)(c)(i), the specific subsection applied by the county court in this case, which pertains to a continuance granted when a material witness is unavailable.

Additionally, the record shows that on appeal to the district court, Lux did not raise the issue of the length of the delay caused by the continuance. Rather, Lux's sole argument before the district court was whether the State had "failed to follow statutorily mandated procedures for requesting a continuance and because the motion for continuance was support[ed] only by the unsworn representations of the prosecutor over [Lux's] objection." Absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014). Because the record shows that Lux did not raise the issue of the length of the continuance either to the county court or to the district court, we do not consider this argument. Nor do we find plain error in a period of delay of less than 2 months.

*Application of Speedy Trial Calculation.*

Having determined that the State's September 2019 continuance was properly excluded from the speedy trial calculations, we further determine that Lux's motion for absolute discharge was properly overruled.

To summarize the discussion above, the parties first agree that there existed 63 days of excludable time due to Lux's motion to suppress, from April 30 to July 1, 2019. Subsequently, the State's motion to continue was granted on September 23, and trial was rescheduled for December 2--this resulted in an additional 70 days of excludable time. Thus, a total of 133 days were properly excludable for speedy trial purposes.

As stated above, without consideration of any excluded time, Lux's 6-month speedy trial clock would have expired on September 16, 2019. With the addition of the 133 excluded days, that deadline was extended to January 27, 2020. Lux's motion for absolute discharge was filed on December 2, 2019. At that time, his speedy trial clock had not yet run.

We determine that the county court did not err in overruling Lux's motion for absolute discharge, nor did the district court err in so affirming.

## CONCLUSION

We conclude that the district court did not commit clear error in affirming the order of the county court which overruled Lux's motion for absolute discharge. The prosecutor's oral pronouncements at the hearing on the State's motion to continue did not materially vary from the evidence submitted at the hearing on Lux's motion for absolute discharge, and thus we conclude that the State met its burden of proving that the continuance was justified as a result of the unavailability of a material witness. Lux's speedy trial clock had not yet run at the time he filed his motion for absolute discharge. Accordingly, we affirm the judgment of the district court.

AFFIRMED.